Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 3707 | **DATE** | 3/14/2001 |
| **CASE TITLE** |  | Jerome J. Howe, Independent Administrator of the Estate of Paul J. Howe, Deceased v. Marathon Oil Co., et al.; and Marathon Oil Co. Third Party Plaintiff v. Krystal Gas Marketing Co., et al. | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 4/5/01 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant/Third Party Plaintiff Marathon's motion for summary judgment as to Counts I and II of its amended third party complaint [46-1] is granted as to the third party defendants' duties to defend, and denied as to the third party defendants' duties to indemnify. A status hearing is set for 4/5/01 at 9:30 A.M.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAR 16 2001 | |
| ✓ | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | FILED FOR DOCKETING | docketing deputy initials |
| | Copy to judge/magistrate judge. | 01 MAR 15 PM 2:00 | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JEROME J. HOWE, Independent Administrator of the Estate of PAUL J. HOWE, Deceased, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MARATHON OIL COMPANY, a Corporation, )<br>and MARATHON PETROLEUM COMPANY, )<br>a Corporation, )<br>Defendants. )<br>and )<br>)<br>MARATHON OIL COMPANY, )<br>)<br>Third-Party Plaintiff, )<br>v. )<br>)<br>KRYSTAL GAS MARKETING COMPANY, )<br>presently known as KGME, Inc., )<br>and HEIDENREICH TRUCKING COMPANY, )<br>)<br>Third-Party Defendants. ) | Case No. 98 C 3707<br><br>DOCKETED<br>MAR 1 6 2001<br><br>Judge Joan B. Gottschall |

## MEMORANDUM OPINION AND ORDER

This action was brought by Jerome J. Howe, as administrator of the estate of the deceased, Paul J. Howe, against Marathon Oil Company.[1] Marathon filed a third party complaint[2] naming as third party defendants Krystal Gas Marketing Company, presently known as KGME, Inc. ("Krystal"), and Heidenreich Trucking Company. In Count I of the third party

---

[1] For simplicity, the court will refer to both Jerome J. Howe and Paul J. Howe interchangeably as "Howe."

[2] Marathon has twice amended its original third party complaint, each time making changes that are irrelevant for purposes of this motion. All references in this opinion to the third party complaint will refer to the most recent version of the third party complaint. Exhibits A and C to the third party complaint, which are relevant to this motion, were attached to the original third party complaint.

complaint, Marathon claims that Krystal owes Marathon a duty to defend Marathon against Howe's claim and to indemnify Marathon for any judgment awarded to Howe in that case. Count II alleges that Heidenreich owes Marathon similar duties to defend and indemnify.[3] The sources of these duties, Marathon alleges, are indemnification and defense provisions in certain contracts entered into by Krystal and Heidenreich with Marathon. Marathon has now moved for summary judgment on Counts I and II of the third party complaint. For the reasons set forth below, Marathon's motion is granted in part and denied in part.

## Background

Heidenreich Trucking Company and Marathon Oil are parties to a Terminal Access Agreement, permitting Heidenreich drivers to load and operate trucks at Marathon's terminals. The deceased, Paul J. Howe, was a truck driver employed by Heidenreich who was fatally injured in an accident while loading his truck with gasoline at a Marathon terminal. Howe, while attempting to exit the terminal, was trapped between his truck's cab door and the cab itself. Howe had exited his truck to use a card reader to open the gate, and his truck rolled forward. Attempting to re-enter the truck to stop it, Howe was crushed between the door and the cab as the truck rolled into the steel gate. Howe's estate brought suit against only Marathon, alleging that Marathon was negligent in the maintenance and operation of its premises. The complaint alleged, *inter alia*, that Marathon was negligent by failing to have a card reader accessible to truck drivers without requiring them to exit their trucks, placing the gate and card reader at the bottom of an incline, failing to have a speed bump at the card reader, failing to have break-away gates, and failing to have warning signs and instructions posted. Marathon then filed a third

---

[3] Counts III-V of the third party complaint are also directed against Heidenreich, but are not relevant to the motion presently under consideration.

2

party complaint against Heidenreich and Krystal Gas Marketing Company. Krystal is a gasoline brokerage – essentially a "middle man" for gasoline purchasers. The gasoline that Howe had loaded into his truck was purchased using a Krystal electronic loading card. The parties dispute whether there was an actual contract binding Krystal to broker the gasoline that Howe loaded. Krystal maintains that Howe had simply used the card in a manner "similar to a credit card" to authorize the loading for Clark Oil, the party who actually placed the order and instructed Heidenreich to have its driver use the Krystal card, without Krystal's knowledge or authorization. (Krystal's Response Brief at 2).

The documents at issue are: 1) the Terminal Access Agreement between Heidenreich and Marathon, and 2) a letter sent from Marathon to Krystal, and an attachment thereto entitled Reseller Product Sales Terms. There is no dispute that the Terminal Access Agreement was an enforceable contract between Heidenreich and Marathon. Krystal, however, maintains that there was no enforceable agreement between Krystal and Marathon as to the gasoline loaded by Howe on the day of the accident.

The Terminal Access Agreement was in writing, signed by a Heidenreich representative, and contained the following language:

> In consideration of your [Marathon's] permitting our [Heidenreich's] drivers to load and/or operate transport trucks at your terminals, we agree: 1. To protect, defend, indemnify and hold you, your officers, employees and agents harmless from and against any and all claims, demands, causes of action, damages, suits, [etc.] . . . for injury to or death of our drivers . . . arising out of or in any way connected with the presence of our drivers at Marathon's terminals . . . excluding, however, claims, demands, causes of action, damages, suits, costs, losses or expenses arising solely out of your negligence.

(Third Pty. Compl., Exh. C).

3

The contractual relationship between Krystal and Marathon is more complex. Marathon sent Krystal a letter dated October 2, 1996. The letter stated that an attachment entitled Reseller Product Sales Terms would "govern all spot sales to you [Krystal]" of certain gasoline products. The letter further stated, "You [Krystal] do not need to sign and return a copy to Marathon. Instead, each time you make a purchase of these products, you will be signifying your consent that only the Reseller Product Sales Terms will apply to that purchase." (Third Pty. Compl., Exh. A). The attached Reseller Product Sales Terms contain the following language:

> Indemnity. Buyer shall indemnify and defend Marathon . . . against any loss, claim, liability, [etc.] . . . arising out of, or relating to, any personal injury, death or property damage (regardless of whether such personal injury, death or property damage is caused by the joint, concurring or partial negligence of Marathon), caused by or happening in connection with, (a) the operation of [Krystal's] business; (b) the use of facilities or handling of Products at any terminal where delivery occurs; (c) the handling, processing, transportation, sale or use of any Product after its delivery to [Krystal]; or (d) [Krystal's] failure to comply with these Terms. The only exception to this indemnity obligation is where the negligence of the Marathon [sic] is determined to be the sole proximate cause of the injury, death, or damage.

(Third Pty. Compl., Exh. A). Although these terms would appear to govern the transaction at issue, Krystal argues that it never had knowledge of Howe's use of the Krystal loading card, and did not get notice of the transaction until the next day, when Krystal received a manifest for the transaction. A manifest appears to be similar to a receipt, and is produced at the terminal and given to the driver when the driver loads his truck with gasoline. Krystal maintains that it had no involvement in this transaction, other than the fact that Howe used a Krystal card, and that the Reseller Product Sales Terms do not govern this particular transaction. Krystal also points out that the Reseller Product Sales Terms agreement was never signed by Krystal.

4

## Analysis

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court must view the record and any inferences to be drawn from it in the light most favorable to the party opposing summary judgment. *See Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir. 1991). The party opposing summary judgment may not rest upon the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue for trial unless there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Bearing this standard in mind, the court will first address Count II, directed against Heidenreich, and then turn to Count I, against Krystal.

### *Heidenreich*

Count II alleges that Heidenreich owes Marathon a duty to defend and indemnify Marathon in the underlying action by Howe's estate. Heidenreich does not deny that the Terminal Access Agreement requires Heidenreich to defend and indemnify Marathon in certain situations. Heidenreich makes two arguments in opposition to summary judgment: 1) that the duty to defend or indemnify has not been triggered in this case because Howe's complaint alleges only that Marathon was negligent, and 2) that the indemnification provision of the Terminal

5

Access Agreement does not provide coverage for Marathon's own negligence because it does not clearly and expressly state that Heidenreich would defend or indemnify Marathon for Marathon's own negligence.

Heidenreich's first argument is that the underlying complaint alleges the *sole* negligence of Marathon, fitting the express exception to Heidenreich's duties under the Terminal Access Agreement. (Third Pty. Compl., Exh. C). In support, Heidenreich cites two Illinois insurance cases, *Cincinnati Companies v. West American Ins. Co.*, 701 N.E.2d 499 (Ill. 1998) and *Crum & Forster Mgrs. Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073 (Ill. 1993). Heidenreich contends that these cases stand for the proposition that "in order to evaluate Heidenreich's 'duty to defend' Marathon, the court must compare the allegations alleged in the underlying complaint to the terms of the Marathon-Heidenreich contract." (Heidenreich's Resp. Brief at 2).

Heidenreich's position is untenable. As Marathon points out, and as this court noted in the related case *Great West Casualty Co. v. Marathon Oil Co.*, No. 99 C 3101, 2001 WL 103426, at *2 (N.D. Ill. Jan. 31, 2001), the court need not wear "judicial blinders" by examining only the underlying complaint and ignoring other evidence and allegations in the case – including the allegations of the third party complaint. *See West Bend Mut. Ins. Co. v. Sundance Homes, Inc.*, 606 N.E.2d 326, 328 (Ill. App. Ct. 1992); *American Country Ins. Co. v. Cline*, 722 N.E.2d 755, 764 (Ill. App. Ct. 1999). After examining the third party complaint, it is clear that evidence might be introduced at trial that would permit a reasonable jury to find that Howe's accident was not caused solely by Marathon's negligence. Most obviously, there are allegations that Howe was negligent by failing to set the parking brake on the truck. (Third Pty. Compl. at 3). Moreover, there is at least some evidence from which a reasonable jury could conclude that

6

Howe did not set the parking brake before exiting the truck to use the card reader. (Decl. of Larry Sobczak). Whether or not Howe set the brake, whether or not he was negligent in failing to do so, and whether or not such negligence was a proximate cause of Howe's death are questions for the jury. Heidenreich's duty to defend is implicated by the possibility that Howe was negligent and that his negligence was a proximate cause of his own death. When there is doubt about whether or not a duty to defend exists, that doubt is to be resolved in favor of the insured (here, the beneficiary of the duty). *See West Bend*, 606 N.E.2d at 328; *Cline*, 722 N.E.2d at 764. The allegations of the third party complaint, together with the evidence produced to date tending to show that Howe was negligent, are sufficient to create the possibility that Howe's claims do not arise out of the sole negligence of Marathon.

Heidenreich's second argument, advanced in its surresponse brief, is that the Terminal Access Agreement's indemnification provision does not cover Marathon's own negligence. In support, Heidenreich relies on a number of cases holding that an indemnity agreement will not be construed as indemnifying one against his own negligence unless such an interpretation is required by the clear and explicit language of the contract, or such intention is expressed in unequivocal terms. *See, e.g., Westinghouse Elec. Elevator Co. v. LaSalle-Monroe Bldg. Corp.*, 70 N.E.2d 604 (Ill. 1947); *Tatar v. Maxon Constr. Co.*, 294 N.E.2d 272 (Ill. 1973); *Zadak v. Cannon*, 319 N.E.2d 469 (Ill. 1974). In these cases, the Illinois supreme court interpreted several similar indemnity agreements as not providing coverage for the negligence of the indemnified party. For example, in *Westinghouse*, the indemnity agreement stated:

> The contractor further agrees to indemnify and hold the owner, the owner's employees and agents . . . wholly harmless from any damages, claims, demands or suit by any person or persons arising out of any acts or omissions by the Contractor, his agents, servants

7

> or employes [sic] in the course of any work done in connection
> with any of the matters set out in these specifications . . . .

*Westinghouse*, 70 N.E.2d at 606. The court held that this indemnity provision was not broad enough to encompass the defendant's own negligence. *See id.* at 607. While Heidenreich correctly states the holding of *Westinghouse* and several other cases, it fails to recognize an obvious distinction.

Not one of the indemnification agreements from the cases cited by Heidenreich contained language similar to the crucial language found in the Terminal Access Agreement: "excluding, however, claims, demands, causes of action, damages, suits, costs, losses or expenses arising solely out of your [Marathon's] negligence." (Third Pty. Compl., Exh. C). The key word in this phrase, of course, is "solely." The parties clearly recognized the possibility of indemnification in situations involving Marathon's own negligence, and specifically excluded from indemnification only those claims arising *solely* out of Marathon's negligence. Thus, it is sufficiently clear and explicit that the parties did intend to provide for indemnification in cases where Marathon's negligence was only a part of what caused an accident leading to a claim. Moreover, the parties used broad, inclusive language in the indemnification provision. An indemnification provision need not specifically reference liability arising out the indemnitee's own negligence in order to clearly and explicitly cover that situation; general inclusive language can be sufficient. *See Granite City Steel Co. v. Koppers Co.*, 419 F.2d 1289, 1290 (7th Cir. 1969); *see also Hader v. St. Louis Southwestern Ry. Co.*, 566 N.E.2d 736, 742-43 (Ill. App. Ct. 1991). Here, a fair and reasonable interpretation of the indemnification provision leads to only one reasonable conclusion – the indemnification provision covers claims arising out of Marathon's own negligence, so long as the claims do not arise *solely* out of Marathon's negligence. Because the

third party complaint and the evidence of Howe's failure to set the parking brake raise the possibility that the claim does not arise solely out of Marathon's negligence, Heidenreich owes Marathon a duty to defend. Hence, Marathon's motion for summary judgment is granted as to Heidenreich's duty to defend Marathon.

The duty to indemnify, however, is narrower than the duty to defend. A party, typically an insurer, may be obligated to defend another party even though the insurer might not ultimately be obligated to indemnify the insured. *See West Bend*, 606 N.E.2d at 327. Marathon has not yet shown that it is entitled to summary judgment as to indemnification. Contrary to Marathon's assertions, it is not undisputed that Howe's alleged failure to set the parking brake was a proximate cause of his death. In paragraph 5 of the third party complaint Marathon alleged that "[Howe's] death was caused by his failure to set the parking brake on the truck." (Third Pty. Compl. at 3). Both Krystal and Heidenreich answered this portion of paragraph 5 by stating that they lacked sufficient knowledge to determine the truth of the statement. Neither Krystal nor Heidenreich have ever admitted that Howe's own negligence proximately caused his death. Resolution of that question will be left to the jury. Thus, it has not been established that Heidenreich will ultimately be obligated to indemnify Marathon for any of Howe's claims. Marathon's motion for summary judgment is accordingly denied as to Heidenreich's duty to indemnify Marathon.

*Krystal*

Count I alleges that Krystal owes Marathon a duty to defend and indemnify Marathon in the underlying action by Howe's estate. These obligations are purportedly based on an agreement between Krystal and Marathon that the Reseller Product Sales Terms would govern all

9

spot sales of certain gasoline products from Marathon to Krystal. Krystal's main argument against summary judgment is that Krystal did not enter an agreement to purchase the gasoline that Howe loaded into his truck on the day of the accident, and that Krystal's only connection to the transaction was that Howe used a Krystal loading card to purchase the gasoline. Thus, Krystal contends that it cannot be characterized as a "buyer" of the product that Howe loaded, and therefore the Reseller Product Sales Terms do not apply.

The Reseller Product Sales Terms provide:

> All transactions between Marathon Oil Company . . . as seller and KRYSTAL GAS MKTING CO., INC. ("Buyer") . . . involving [certain types of gasoline, including the type loaded by Howe] made on or after November 1, 1996 shall be subject to the following terms ("Terms") until further notice.

(Third Pty. Compl., Exh. A). One of the terms following this language is the indemnification provision, set forth above, in the Background section of this opinion. Thus, the question of whether or not the indemnification provision applies in this case turns on whether or not Krystal was a buyer engaged in a transaction with Marathon. Although Krystal contends that it cannot be considered a buyer of the product loaded by Howe, the court disagrees. Krystal makes much out of the fact that its only connection to the transaction was a loading card, and that nobody at Krystal had notice of the transaction until the next day. Nowhere in the Reseller Product Sales Terms, however, does it state that individual purchases must be pre-approved by Krystal. Rather, Krystal distributes loading cards, which essentially pre-authorize drivers to make gasoline purchases on behalf of Krystal, to be resold to customers, such as gasoline retailers.

Moreover, it appears from the pleadings that it was not uncommon for Krystal to purchase gasoline without pre-approval of the specific transaction. In Krystal's affirmative

10

defense to the third party complaint, Krystal states the following:

> On information and belief, CLARK temporarily ran out of gasoline at its terminal and had to make a delivery to its customer, AVIS RENT-A-CAR, therefore, [sic] CLARK instructed HEIDENREICH to pick up gasoline at MARATHON using KRYSTAL GAS MARKETING COMPANY's card, as Clark would not have its own loading card for [the Marathon] terminal. KRYSTAL GAS MARKETING COMPANY had no knowledge of the transaction, but it was an accepted practice. KRYSTAL GAS MARKETING COMPANY would have received notice of the transaction when it received a manifest.

(Krystal's Answ. to Third Pty. Compl. at 12). Krystal eventually paid Marathon for the gasoline that Howe had loaded and billed Clark Oil for the same gasoline. There can be no question that these events amounted to a "transaction" between Marathon and Krystal in which Krystal was a "buyer" of the gasoline loaded by Howe. The fact that the gasoline purchase was ordered by Clark Oil and that title to the product passed to Clark Oil once it was loaded into the truck is irrelevant. This is not a standard risk of loss question, but rather a question about the applicability of the indemnification provision. The Reseller Product Sales Terms unambiguously provide that those terms, and only those terms, governed transactions for the sale of gasoline from Marathon to Krystal. Where a contract is unambiguous, summary judgment is appropriate. *See generally Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1389 (7th Cir. 1993) (citing *Metalex Corp. v. Uniden Corp. of America*, 863 F.2d 1331, 1333 (7th Cir. 1988)).

Krystal also appears to argue that any agreement between Marathon and Krystal is unenforceable because no representative of Krystal ever signed the Reseller Product Sales Terms. Krystal at times seems to be asserting the statute of frauds as a defense, although it never uses

11

that terminology in its response brief.[4] The statute of frauds will not protect Krystal in this case. Under the Uniform Commercial Code, which governs contracts for the sale of goods, a contract between two merchants need not be signed by a party receiving written confirmation of the contract, so long as the writing would be binding as to the sending party and the receiving party does not object in writing within 10 days. *See* U.C.C. § 2-201.[5] Here, both parties were merchants, because they both regularly deal in the kind of goods that were the subject of this transaction – gasoline products. *See* U.C.C. § 2-104. The letter and the attached Reseller Product Sales Terms would obviously be sufficient to bind Marathon, and there is no indication that Krystal ever objected, in writing or otherwise, to the agreement confirmed by Marathon's letter. Thus, the writing is sufficient to satisfy the statute of frauds.

---

[4] Krystal's argument could also be construed as a contention that Krystal, by not signing the writings sent by Marathon, never accepted Marathon's offer to be bound by the Reseller Product Sales Terms. The offer letter sent by Marathon, however, explicitly indicated that any future spot purchases of gasoline by Krystal would constitute acceptance of the Reseller Product Sales Terms. Courts have found acceptance in similar circumstances. In *Pratt Central Park Ltd. P'ship v. Dames & Moore, Inc.*, No. 92 C 8192, 1994 WL 323338, at *4-*5 (N.D. Ill. Jun. 27, 1994), the offeree sent a letter requesting that the offeree sign and return the attached contract, but the contract contained a provision stating that the offeree's authorization of offeror's performance without a valid execution of the contract would constitute the offeree's acceptance of the terms of the written contract. The offeree later authorized the offeror to begin performance, but never signed the contract. The court held that the offeree's act of authorization amounted to a valid acceptance of the terms of the written contract. *See id.* It is well-settled that a party named in a written contract may indicate acceptance by his conduct, even though he has not signed the writing. *See, e.g., id.* at *4; *Amelco Elec. Co. v. Arcole Midwest Corp.*, 351 N.E.2d 349, 354 (Ill. App. Ct. 1976). Even if Krystal did not know of this particular purchase before Howe used the loading card, Krystal received and read the offer letter from Marathon, did not object to any of the terms in the attached contract, and continued to authorize its agents to purchase gasoline using Krystal's loading cards. This conduct manifested Krystal's intent to be bound by the Reseller Product Sales Terms. *See Pratt*, 1994 WL 323338, at *4-*5.

[5] The Reseller Product Sales Terms contains a choice of law provision choosing Ohio law to govern the agreement. (Third Pty. Compl., Exh. A). Choice of law is irrelevant, however, because the rule set forth in § 2-201 of the U.C.C. has been adopted by both Ohio, *see* Ohio R.C. Ann. § 1302.04, and Illinois, *see* 810 ILCS 5/2-201.

Finally, Krystal appears to make the argument (also made by Heidenreich and discussed above) that an indemnification provision does not cover the indemnitee's own negligence unless the provision clearly and explicitly provides for that. Krystal, like Heidenreich, relies on *Westinghouse* and similar cases. Krystal's argument is flawed for many of the same reasons that Heidenreich's argument failed. Krystal's argument is even weaker, however, because the indemnification provision of the Reseller Product Sales Terms *did* expressly make reference to Krystal's duty to indemnify Marathon for its own negligence, so long as that negligence was not the sole cause of the claim. (Third Pty. Compl., Exh. A) Inserted as a parenthetical into the indemnification provision is the following phrase: "regardless of whether such personal injury, death or property damage is caused by the joint, concurring or partial negligence of Marathon." (Third Pty. Compl., Exh. A). The Reseller Product Sales Terms could not be more clear on this point.

The court concludes that the Reseller Product Sales Terms governed this transaction. For the reasons discussed above, the pleadings and evidence in this case raise the possibility that Howe's claims against Marathon did not arise solely out of Marathon's negligence. Under the Reseller Product Sales Terms, Krystal owes Marathon a duty to defend Marathon against Howe's claims. As with Heidenreich, however, the question of indemnification cannot be resolved on summary judgment. A jury could reasonably conclude that only Marathon's negligence caused the accident that led to Howe's claims. Hence, Marathon's motion for summary judgment is granted as to Krystal's duty to defend Marathon, but denied as to Krystal's duty to indemnify Marathon.

## Conclusion

Heidenreich is bound by the indemnification and defense provision contained in the Terminal Access Agreement. Krystal is bound by the similar provision found in the Reseller Product Sales Terms. Because there are allegations and evidence sufficient to establish the possibility that Howe's claims do not arise solely out of Marathon's negligence, both Heidenreich and Krystal owe Marathon a duty to defend Marathon against Howe's claims. The question of whether Heidenreich and Krystal also owe Marathon a duty to indemnify cannot be resolved until after a trier of fact ultimately determines the degree of negligence attributable to each of the parties involved. Marathon's motion for summary judgment as to Counts I and II of the amended third party complaint is granted only as to the third party defendants' respective duties to defend, and denied in all other respects.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: March 14, 2001